IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-001584-RBJ

ANTHONY PORCO, IV, a child by his father Anthony Porco, III,

    Plaintiff,

v.

LEWIS PALMER SCHOOL DISTRICT 38,
ANTHONY KARR,
JAMES PORTER,
STEPHANIE KUGLER,
GARY GABEL,
KAREN BROFFT,
ROBERT FOSTER,
TAMARA HARDIN,
JENNIFER DAY, and
SEAN O'CONNOR,

    Defendants.

## ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's amended complaint under Rule 12(b)(1) and Rule 12(b)(6). ECF No. 16. For the reasons below, the Court GRANTS that motion.

### I. FACTS[1]

Plaintiff Anthony P., IV ("LT") is a former student at schools operated by defendant Lewis Palmer School District 38 ("the District").[2] *See* Amended Complaint, ECF No. 13 at ¶¶1–

---

[1] The following facts are taken from plaintiff's amended complaint. *See* Amended Complaint, ECF No. 13. They are taken as true for purposes of defendants' Rule 12(b)(6) arguments, see *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016), but not their Rule 12(b)(1) arguments, see *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995).

4, 9. Plaintiff is diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and impulse control disorder. *Id.* at ¶8.

In November of 2005 the District put plaintiff on a Section 504 plan and Individualized Education Plan ("IEP") to help deal with his behavioral and comprehension issues arising from these conditions.[3] *Id.* at ¶9. However, roughly seven years later on October 8, 2012 the District took LT off his IEP citing his improved behavior. *Id.* at ¶10. The next summer, LT entered the eighth grade at Lewis-Palmer Middle School ("Lewis-Palmer"), which is operated by the District. *Id.* at ¶¶4, 11. Around that time LT's parents notified school administrators at Lewis-Palmer that plaintiff had been bullied over the summer by a classmate. *Id.* at ¶11. Plaintiff alleges that he was continually bullied throughout the fall of 2013 at Lewis-Palmer by that same bully and other classmates. *See id.* at ¶¶14–17. During at least one instance of this bullying, school officials disciplined LT for what plaintiff characterizes as him defending himself against these attacks. *Id.* at ¶14.

On October 16, 2013 plaintiff's parents attended school conferences and a Section 504 reassessment meeting for plaintiff to discuss plaintiff's issues with bullying. *Id.* at ¶16. Plaintiff alleges that despite notifying several school officials about the bullying, they failed to end it. *See, e.g.*, *id.* at ¶20. Consequently, early the next year plaintiff was again disciplined for allegedly protecting himself from bullies. *Id.* at ¶17. Despite more attempted discussions with

---

[2] Plaintiff is a minor represented by his father, plaintiff Anthony Porco, III. For simplicity's sake, the Court will refer to these parties singularly as "plaintiff" or "LT." *See* ECF No. 13 at ¶2.

[3] "A Section 504 Plan [under the Rehabilitation Act] specifies the accommodations and modifications the school district will offer to ensure that a disabled student receives an appropriate education." *See, e.g.*, *S.M. ex rel. G.M. v. Sch. Dist. of Upper Dublin*, No. CIV.A. 10-4038, 2011 WL 3678325, at *1 (E.D. Pa. Aug. 18, 2011). An IEP, in broad terms, is a document providing a more individualized plan for how a disabled child will meet certain educational goals and how his or her educational successes will be measured. *See* 20 U.S.C. § 1414(d)(1)(A).

2

school officials about the bullying, plaintiff alleges that the school failed to respond to these renewed complaints as well. *See id.* at ¶¶18, 20.

On April 14, 2014 plaintiff threatened to "shoot up the school" after being bullied on the bus. *Id.* at ¶22. He claims that he did so because he "believed it was the only way to get the school to respond to [his complaints] and to stop [the bullying]." *Id.* Roughly one week later plaintiff was put on a behavioral contract by the school instead of an IEP for his behavior issues. *Id.* at ¶23. This contract restricted plaintiff's behavior, although it does not appears plaintiff was otherwise disciplined at that time for the threat he admits he made. *Id.*

However, over the summer of 2014 plaintiff was again disciplined for his reactions to bullies. *See id.* at ¶29. As plaintiff puts it, the District suspended him for five days for an "incident" that occurred at a midnight football team sleepover. *Id.* at ¶¶27–29. Around this time, plaintiff's parents were again in contact with school officials about the ongoing bullying of their son. *See, e.g.*, *id.* at ¶30.

Facing expulsion due to this event and others, plaintiff signed a new behavioral contract in late August of 2014 before beginning school as a freshman at Palmer Ridge High School ("Palmer Ridge"), which is also run by the District. *See id.* at ¶32. Plaintiff nevertheless alleges that as the school year began bullies continued to pick on him and that he was continually the target of disciplinary action for defending himself against these attacks. *Id.* at ¶¶35–38.

On November 14, 2014 plaintiff's school held another Section 504 reassessment meeting, during which time plaintiff's parents voiced their continued concerns about the bullying of their son. *Id.* at ¶¶38. Plaintiff alleges that during and after this meeting school officials again failed to do anything to address these concerns. *Id.* Perhaps because of their belief that District officials had continually failed to address their concerns about the bullying of their son,

plaintiff's parents attempted to place LT in a different school in early January 2015. *Id.* at ¶39. They were unsuccessful. *See id.*

Later that year on March 20, 2015 LT was assigned a special counselor to help him deal with his ongoing behavioral issues, particularly for when plaintiff returned to school after Spring Break that year. *Id.* at ¶45. Roughly a few weeks later, however, plaintiff was suspended for five days and was recommended for expulsion after another altercation with a classmate. *Id.* at ¶¶46–49. Plaintiff alleges that shortly after that incident that gave rise to this suspension his physician informed his parents that plaintiff was now also suffering from symptoms of post-traumatic stress disorder ("PTSD"). *Id.* at ¶47. A few days later plaintiff's parents received a letter informing them that the school was going forward with the recommendation that plaintiff be expelled and that plaintiff was suspended for an additional ten days in the interim. *Id.* at ¶48.

Shortly after receiving that letter, plaintiff's mother contacted defendant Anthony Karr (the Freshman Principal) and other school administrators to inform them that the school was allegedly pursuing the expulsion of her son without proper process since it had failed to hold a "manifestation determination" in accordance with Section 504 of the Rehabilitation Act.[4] *Id.* at ¶50. Soon after that complaint, the school held a manifestation determination hearing on April 27, 2015. *Id.* at ¶¶51–52. After that hearing took place, during which plaintiff alleges the school "failed to determine whether LT's conduct was a manifestation of his disability[,]" plaintiff's parents discussed transferring LT out of Palmer Ridge to avoid having an expulsion on his record. *Id.* at ¶53. The District allegedly refused to accept that transfer. *Id.* at ¶54.

---

[4] A manifestation hearing, as the name suggests, is a hearing to determine whether a child's certain behavior was a manifestation of his or her disability. *See* 20 U.S.C. § 1415(k)(1)(E). It is required to take place "within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct[.]" *Id.*

Instead, the school held an expulsion hearing on May 5, 2015 apparently without properly notifying plaintiff's parents of the new date, time, and location for that hearing. *Id.* at ¶55. At that hearing, plaintiff was expelled for failing to attend. *Id.*

Plaintiff's amended complaint takes the next series of events slightly out of order. However, it appears that in the fall of 2015 plaintiff filed a complaint with the U.S. Department of Justice Office of Civil Rights ("OCR"). *See id.* at ¶67. Based on that complaint, the OCR intervened in plaintiff's situation, see *id.* at ¶59, which resulted in two events. First, on October 8, 2015, the District Superintendent, defendant Karen Broffit, see *id.* ¶30, signed a "Voluntary Resolution Agreement" on behalf of the District, in which she allegedly promised to put into place additional safeguards for plaintiff's benefit and to report to the OCR on plaintiff's situation, see *id.* at¶64. Second, in early November 2015 plaintiff received a new expulsion hearing. *Id.* at ¶59. During that hearing, however, the hearing officer upheld plaintiff's expulsion, although plaintiff alleges that the hearing report produced after that hearing does not "contain a reasoned judgment" for the decision. *Id.* Plaintiff alleges that because of this expulsion he is unable to register in a new school. *Id.* at ¶60.

Procedural History

Plaintiff initially filed suit under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Individuals with Disabilities Education Act ("IDEA") against only the District on June 22, 2016. *See* Complaint, ECF No. 1 at ¶¶65–105. He also included two state law claims, one for negligence and one for negligent infliction of emotional distress. *See id.* at ¶¶94–105. After the District moved to dismiss plaintiff's complaint on August 29, 2016, see ECF No. 11, plaintiff amended his complaint on September 12, 2016, see ECF No. 13. This mooted defendant's motion. *See* ECF No. 19. As part of his

amended complaint, plaintiff added numerous District employees as defendants, see *id.* at ¶5, as well as a state law claim for breach of contract, *id.* at ¶¶113–116.  On September 29, 2016, defendants filed a motion to dismiss plaintiff's amended complaint.  ECF No. 16.  That motion has been fully briefed.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).  There is a presumption that a cause of action lies outside a federal court's limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (quoting *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014)).

A motion to dismiss under Rule 12(b)(1) can either: "(1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).  Where, as here, there is a factual attack on the basis for jurisdiction, the Court does not presume the truthfulness of plaintiff's allegations but has wide discretion to consider other evidence presented.  *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995).

### B. Rule 12(b)(6).

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570

(2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal,* 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g., Twombly,* 550 U.S. at 556; *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

Defendants move to dismiss all five counts contained within plaintiff's amended complaint. *See* ECF No. 16 at 4–15. They argue that plaintiff's federal law claims contained within Counts I and II should be dismissed for lack of jurisdiction under Rule 12(b)(1) because plaintiff has failed to exhaust his administrative remedies under the IDEA. *Id.* at 4–12. Next, they contend that plaintiff's state claims should be also dismissed, either under Rule 12(b)(1) because this Court should not exercise supplemental jurisdiction over them after dismissing plaintiff's federal claims, or because plaintiff has not sufficiently pled them under Rule 12(b)(6). *Id.* at 12–15. Agreeing with defendants' Rule 12(b)(1) arguments and therefore not reaching their Rule 12(b)(6) arguments, the Court GRANTS defendants' motion to dismiss. I address each count within plaintiff's amended complaint in turn.

**A. Count I: Denial of FAPE under the ADA and Section 504.**

Count I of plaintiff's amended complaint contains a number of claims asserted against the District. *See* ECF No. 13 at ¶¶70 –93. It contends, generally, that through its responses to the alleged bullying of plaintiff the District denied LT a Free Appropriate Education ("FAPE") in

7

violation of the ADA, Section 504, and the IDEA. *See id*. However, liberally construed, Count I can be read to contain six claims for relief: (1) discrimination under the ADA; (2) discrimination under Section 504; (3) retaliation under the ADA; (4) retaliation under Section 504; (5) Section 504 procedural violations; and (6) a denial of FAPE due to a failure to address bullying.[5] *See id*. Defendants contend that each claim is subject to the exhaustion requirements of the IDEA and that each should be dismissed under Rule 12(b)(1) because plaintiff has failed to meet that requirement. ECF No. 16 at 4–12. I agree.

As the Tenth Circuit has explained, "[t]he IDEA . . . creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities." *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015) (citing various provisions of 20 U.S.C. § 1415). Thus, "[i]f a parent has a complaint with respect to any matter relating to the . . . provision of a free appropriate public education to such child . . . the IDEA entitles the parent to an impartial due process hearing . . . [and an appeal that] must be exhausted before a civil action may be filed in district court under the ADA, Rehabilitation Act, or other Federal laws protecting the rights of [disabled] children[.]" *Id*. (internal quotation marks and citations omitted).

This is only true, however, "if the plaintiff seek[s] relief that is also available under [the IDEA]." *Id.* (brackets in original). The Tenth Circuit interprets this "available relief" requirement to mean "relief for events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers or specifically seeks." *Id.*

---

[5] Defendants argue that Count I can actually be read to contain seven claims, which include the six listed above as well as a claim for a "hostile educational environment." ECF No. 16 at 6. The Tenth Circuit, however, is not among the very small minority of courts recognizing such a claim, and this Court therefore refuses to recognize that novel cause of action as well. *See Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1268 (N.D. Okla. 2013).

(internal quotation marks omitted) (quoting *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cty. of Denver, Colo*., 233 F.3d 1268, 1274 (10th Cir. 2000)).

In deciding whether a plaintiff has "available relief" under the IDEA, courts within the Tenth Circuit focus on "whether the plaintiff has alleged injuries that could be redressed to *any degree* by the IDEA's administrative procedures and remedies." *Id.* (emphasis added). Accordingly, courts assessing whether the exhaustion requirement applies decide whether the plaintiff's injuries are "educational in nature" by determining whether the alleged acts giving rise to them have "both . . . an educational source and an adverse educational consequence[.]" *See id.* at 1229; *Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d 1102, 1114 (D. Colo. 2015).

Here, plaintiff does not contest that all of his Count I claims are subject to the IDEA's exhaustion requirement. *See generally* ECF No. 24. I agree. Because these claims assert that certain actions taken by the District restricted or disrupted LT's educational opportunities and thereby denied him a FAPE, they are all "educational in nature" and subject to the IDEA's exhaustion requirement. *See, e.g.*, *Carroll*, 805 F.3d at 1227; ECF No. 13 at ¶91 ("[The District's] deliberate indifference to the ongoing and persistent bullying of LT deprived him of access to the educational benefits or opportunities provided by the school[.]"); *id.* at ¶83 (The School District's solution of telling LT to leave the classroom when faced with bullying . . . effectively restricted LT's educational opportunities[.]"); *id.* at ¶92 (summarizing that "[a]ll of these acts" comprising Count I "constituted a continuing violation of . . . [the IDEA]"); *id.* at 10 ("Count I – Denial of a Free Appropriate Public Education ("FAPE") By Lewis Palmer School District Under the Americans with Disabilities Act (42 U.S.C. § 12131 et. al.) [sic] and Section 504 of the Rehabilitation Act (29 U.S.C. 794 et al.) [sic]").[6]

---

[6] Further supporting the conclusion that the IDEA's exhaustion requirement should apply here is the Tenth Circuit's repeated words of caution that "[w]here the IDEA's ability to remedy a particular injury is

That conclusion brings me to the next logical question: has plaintiff exhausted his remedies under the IDEA? For his part, plaintiff argues that his situation is "unusual," and that this Court should find that he has exhausted this requirement for two reasons. ECF No. 24 at 3. First, he argues that he "went through or attempted to go through several hearings with several different organizations and members of the [District]" including a manifestation hearing that "was equivalent to and understood to be a request for a reinstatement or review of an IEP." *Id.* at 3–4. Second, he argues that he has met this requirement by filing a complaint with the OCR. *Id.* at 4. Alternatively, he contends that the District "waived" this requirement through the "Voluntary Resolution Agreement" it signed with the OCR. *Id.* at 2. I find none of these arguments persuasive.[7]

For starters, plaintiff cites no legal support for his position that merely attending a bunch of different hearing or filing a complaint with the OCR satisfies this requirement. Instead, as I understand it, in order to comply with the IDEA's comprehensive exhaustion requirement, which is spelled out in various portions of 20 U.S.C. § 1415, a party must file an administrative complaint with local school officials, attend a preliminary meeting, proceed to a trial-like due process hearing (or mediation), appeal that hearing if it is unsatisfactory, and only *then* file a complaint in federal court. *See A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1246 (10th Cir. 2015) (spelling out this process); 20 U.S.C. § 1415(*l*) ("[B]efore the filing of a

---

unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." *See, e.g.*, *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015); *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cty. of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000).

[7] Plaintiff also asserts in conclusory fashion in his amended complaint that he has exhausted his administrative remedies and that the District has waived this requirement. *See* ECF No. 13 at ¶¶67–68. Because the Court need not accept conclusory allegations as true, see *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), especially when assessing a Rule 12(b)(1) motion, those allegations are insufficient to save plaintiff's claims.

civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted *to the same extent* as would be required had the action been brought under this subchapter.") (emphasis added); *see also* 20 U.S.C. § 1415(k)(3)(A) (explaining that if a party disagrees with the manifestation determination, he or she may *then* request the due process hearing provided for in the IDEA to begin the administrative review process).  Simply put, there is no indication that plaintiff followed that statutorily-prescribed process before filing suit here.

Furthermore, I find no support for plaintiff's position that defendants "waived" this requirement through the "Voluntary Resolution Agreement" the District signed with the OCR.  It is unclear whether the Tenth Circuit even recognizes a defendant's ability to waive this requirement, which, under prior Tenth Circuit cases, would amount to a waiver of a challenge to subject matter jurisdiction.  *See McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007); *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 204 (2d Cir. 2007) (grappling with this dilemma).

However, even if it did, the "Voluntary Resolution Agreement" would be a poor application of what would amount to "fourth" exception to the IDEA's exhaustion requirement. *See Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996) (listing the other three exceptions).  After all, that document does not explicitly state that the District was waiving the right to contest that issue by signing, much less even mention the IDEA's administrative process or requirement.  *See generally* ECF No. 16-1; *see also id.* at 6 (acknowledging that by signing the District understood "that *OCR* may initiate administrative enforcement or judicial proceedings to enforce . . . the Agreement") (emphasis added). Accordingly, I find that all of the claims contained within Count I of plaintiff's amended

11

complaint are subject to the IDEA's exhaustion requirement and that, because plaintiff has failed to meet that requirement, Count I must be dismissed in its entirety.

### B. Count II: Denial of FAPE by Inappropriately Removing an IEP.

By comparison, Count II of plaintiff's amended complaint is much simpler. It asserts that the District denied LT a FAPE in violation of Section 504 and the IDEA because it inappropriately removed his IEP in 2012 when his behavior had improved and because it subsequently failed to reinstate one after plaintiff's behavioral problems re-emerged. ECF No. 13 at ¶¶94–100. Again, defendants argue that this claim should be dismissed because it is subject to the IDEA's exhaustion requirement with which it contends plaintiff has failed to comply. ECF No. 16 at 6. Again, I agree with defendants.

Like his Count I claims, I find that plaintiff's Section 504 claim contained within Count II is "educational in nature" and therefore subject to the IDEA's exhaustion requirement. *See* ECF No. 13 at ¶97; *Carroll*, 805 F.3d at 1229. Because he has failed to meet that requirement, see *supra* Part III.A, plaintiff's Count II Section 504 claim must be dismissed.

Similarly, plaintiff's IDEA claim contained within Count II must be dismissed too. The Tenth Circuit has made clear that when a plaintiff alleges a violation of the IDEA itself, he or she must exhaust the IDEA's administrative remedies by either "attempt[ing] to amend . . . [an] existing IEP or [by] obtain[ing] a new IEP before pursuing the IDEA claim[.]" *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007) ("We hold today that before a party may seek relief in federal court alleging a violation of the IDEA's substantive provisions, a party must first request an IEP for the disabled child, or seek a change to a current IEP if one exists, from the agency designated to create that plan under the state's educational framework."). Although plaintiff did not have an IEP after 2012, he did not request or obtain a new one through

the IDEA's administrative process before filing this claim. Accordingly, the entirety of Count II of plaintiff's amended complaint must also be dismissed.

### C. Counts III, IV, and V: Negligence, Negligent Infliction of Emotional Distress, and Breach of Contract.

The remaining counts within plaintiff's amended complaint assert state law claims for negligence (Count III), negligent infliction of emotional distress (Count IV), and breach of contract (Count V). With no federal law claims left to adjudicate after finding dismissal of Counts I and II appropriate, see *supra* Parts III.A–B, I decline to exercise supplemental jurisdiction over these state claims. 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Carroll*, 805 F.3d at 1230 (holding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the plaintiff's remaining state law claim where it had properly dismissed all of the plaintiff's federal claims). Counts III, IV, and V are therefore dismissed as well.

## ORDER

Through the IDEA, Congress let it be known that it prefers that schools and local educational entities, rather than courts, get a first crack at remedying the kinds of issues of which plaintiff complains. Because plaintiff has not yet fully availed himself of those remedies, this Court cannot yet decide whether plaintiff should be afforded the relief he seeks. Accordingly, for the reasons above, the Court GRANTS defendants' motion to dismiss and dismisses without prejudice the entirety of plaintiff's amended complaint.

DATED this 2nd day of March, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge